IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

─────────────────────────────────────────────────────

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
vs.                            )      No. 08-cr-20340-BBD-dkv
                               )
STEVIE NUTTALL,                )
                               )
          Defendant.           )

─────────────────────────────────────────────────────

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO COMPEL AND IN
THE ALTERNATIVE TO DISMISS INDICTMENT OR EXCLUDE EVIDENCE

─────────────────────────────────────────────────────

Before the court is the motion of the defendant, Stevie
Nuttall, filed October 8, 2009, pursuant to Rules 12(b)(3)(C) and
16(c) and (d) of the Federal Rules of Criminal Procedure to compel
discovery or in the alternative to dismiss the indictment or
exclude evidence. By order of reference, this matter was referred
to the United States Magistrate Judge for determination. Because
the motion seeks suppression of evidence and dispositive relief, a
report and recommendation is submitted instead. The United States
filed a timely response. For the reasons set forth below, it is
recommended that the motion be denied.

I. BACKGROUND

On May 18, 2008, Memphis Police Department ("MPD") officers
arrested defendant Stevie Nuttall ("Nuttall") for aggravated
assault, unlawful possession of a weapon, and reckless endangerment
with a deadly weapon. The arresting officers created a record of

arrest, affidavit of complaint and incident report regarding the incident.  The record of arrest included information concerning the handgun found on Nuttall during his arrest, which the officers described as a "Hi point, Model JCP; .40 caliber S & W; serial number 768720."  The gun, along with related items, was then transported to the MPD Property & Evidence Room at 201 Poplar.  The officers created an evidence report under the number "#080501**3**2" and an incident report under the number "#0805010258me."  The gun was checked out by an officer from the Project Safe Neighborhood Unit on June 27, 2008, and processed for latent fingerprints. After none were found, the gun was returned to the MPD Property & Evidence Room.  On July 4, 2008, Nuttall admitted during a jail telephone call to being caught with a pistol.  On October 21, 2008, a federal grand jury indicted Nuttall for possession of the firearm in violation of 18 U.S.C. § 922(g).  Nuttall's attorney requested discovery by letter on November 24, 2008, and the government complied on that same day.

On May 19, 2008, in an unrelated case, MPD officers arrested Jermel Brown ("Brown") for aggravated assault with a deadly weapon with a handgun.  Police recovered two firearms, a Rossi .44 caliber revolver and a Hi Point 9mm caliber semi-automatic pistol, from the incident.  This evidence was also transported to the MPD Property & Evidence Room at 201 Poplar and labeled evidence report number "#080501**8**2" and incident report number "#0805010643me."  A Shelby

County Grand Jury indicted Brown on October 23, 2008, and the Shelby County District Attorney General's office subsequently requested that the evidence in Brown's case be sent to the Shelby County Clerk's Property & Evidence Room.

Due to an illegible request form, the MPD Property & Evidence Room mistakenly sent the gun recovered from Nuttall to the Shelby County Criminal Court Clerk's Property and Evidence Room at 201 Poplar. Nuttall's gun was then improperly assigned state evidence number "#045715." Brown pled guilty in Shelby County Criminal Court on February 4, 2009. Nuttall's gun, erroneously marked as state exhibit number "#045715," was never checked out from the Shelby County Criminal Court Clerk's Property & Evidence Room.

Neither the government nor Nuttall's attorney discovered the mistake until May 18, 2009, during a scheduled meeting between the U.S. Attorney and Nuttall's attorney.[1] The attorneys originally phoned the MPD Property & Evidence Room to inform them that the attorneys would arrive shortly to inspect Nuttall's weapon, at which time the attorneys discovered that the handgun was no longer there. The attorneys then called Dawn Richter ("Richter") at the Shelby County Criminal Court Clerk's Property & Evidence Room, who informed them that Nuttall's handgun had been transported to the Shelby County Criminal Court Clerk's Property and Evidence Room in

---

[1]    Nuttall's attorney contends that he did not meet with the U.S. Attorney until June 23, 2009. This discrepancy is immaterial to the resolution of this matter.

connection with another defendant.[2]  At this time, the attorneys discussed having ATF Agent Benny Allen ("Agent Allen"), the case agent, investigate the matter and return the handgun to its proper location.  On June 1, 2009, Agent Allen and Richter together located Nuttall's handgun, properly reassigned it, and returned it to the MPD Property & Evidence Room.

On June 19, 2009, the attorneys met at the MPD Property & Evidence Room to inspect the handgun and interview witnesses.  The attorneys interviewed both Richter and MPD Property & Evidence Room officer, Casey Freeman ("Freeman").  The attorneys' inspection of the firearm revealed that it contained the same markings as indicated in Nuttall's original arrest reports.  They also obtained copies of documents relating to the chain of custody of both Nuttall's and Brown's handguns.  On September 23, 2009, Nuttall's attorney sent an investigator to 201 Poplar to conduct a follow up investigation with officials from both property rooms.  He also requested copies of the documents originally delivered to the attorneys at the June 19, 2009 investigation, which the government provided.

Nuttall contends that during the investigation and correction of the circumstances surrounding the assignment of Nuttall's gun to Brown's state court case, Richter changed the property and property

---

[2]     Both phone conversations occurred on speaker phone and in the presence of Nuttall's attorney.

4

receipt numbers on both Brown's receipt and Nuttall's receipt and backdated them to November 11, 2008, and that Richter discarded the original state exhibit receipt numbered "045715" which bore a guilty plea stamp ("the Original State Exhibit Receipt"). Nuttall contends that before the Original State Exhibit Receipt was discarded, Richter made copies of it and sent those copies to MPD and the "State." Nuttall also contends that neither he nor his counsel were ever informed about any changes, modifications, or discarding of evidence or chain of custody documentation that took place after the government requested an inspection.

## I. ANALYSIS

Nuttall moves to compel discovery of "any and all evidence obtained by Memphis Police officers and relied upon by the [government] as a result of their failure to disclose exculpatory evidence as required by [*Brady v. Maryland*, 373 U.S. 83 (1963)]." (Mot. to Compel, 4.) In the alternative, Nuttall requests that any evidence concerning the firearm be excluded or that his indictment be dismissed because the significance and materiality of the missing evidence impacts his ability to have a fair trial in violation of his due process rights.

A.    Production of the Missing Documents

The government's statutory discovery obligation concerning documents is governed by Federal Rule of Criminal Procedure 16. Rule 16(a)(1)(E) requires the government to produce documents "in

its possession, custody or control" under three circumstances: the government intends to use the documents as part of its case-in-chief at trial; or the documents are material to the preparation of defendant's defense; or the documents were obtained from the defendant. FED. R. CRIM. P. 16(a)(1)(C). Rule 16 has been interpreted to permit discovery of documents that are "relevant to the development of a possible defense." *United States v. Mandel*, 914 F.2d 1215, 1218 (9th Cir. 1990)(quoting *United States v. Cleg*, 740 F.2d 16, 18 (9th Cir. 1984)). To obtain discovery of documents material to a defense, the defendant must make a prima facie showing of materiality. *Id.; United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1990). "[G]eneral allegations of materiality [do not] suffice." *Id*. at 1219.

The preliminary issue is whether the documents sought are within the "possession, custody or control" of the government. Nuttall has specifically requested any and all documents related to Jermel Brown, who pled guilty to the possession and control of the identical weapon. In particular, Nuttall seeks the Original State Exhibit Receipt for Jermel Brown which indicates the firearm recovered from Nuttall was assigned to Jermel Brown's case and which bears a guilty plea stamp indicating that Brown entered a guilty plea on February 4, 2009. Nuttall also asks the court to compel the government to produce a stipulated authentic duplicate of the document originally possessed and/or maintained by Richter.

6

The government has represented that it "has provided the defense with all the documents within the Government's possession relating to the chain of custody of the evidence for both Stevie Nuttall (sic) and Jermel Brown," (Resp. of the U.S., 13), and that it does not possess the particular document sought by Nuttall. The government cannot be required to produce documents it does not have or does not control.   Moreover, because neither the federal government nor the MPD possesses a photocopy of the Original State Exhibit Receipt, to require the government to produce a stipulated authentic duplicate of the Original State Exhibit Receipt would necessitate the creation of such a document.   Nuttall has not presented the court with any authority for such a request.   If Nuttall believes the Shelby County Criminal Court Clerk's office possesses a photocopy of the Original State Exhibit Receipt, then Nuttall can issue a subpoena to the Shelby County Criminal Court Clerk for the document. It is submitted, therefore, that Nuttall's motion to compel the production of documents should be denied.

B.   Dismissal of the Indictment

In the alternative, Nuttall seeks dismissal of his indictment based on the government's alleged failure to preserve evidence relating to the chain of custody of the gun in question in violation of his due process rights.   In *Brady v. Maryland*, the Supreme Court held that the suppression of exculpatory evidence favorable to an accused upon request violates due process when the

7

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83 (1963).

If the government fails to preserve material evidence whose value is only "potentially useful" to a defendant, then another test, the test laid down by the United States Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (1988), is applied. There, the Court held that in order to establish a due process violation, the defendant must show:

> (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.

*Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002)(citing *Youngblood*, 488 U.S. at 57)).

As to the first *Youngblood* factor, negligence or even gross negligence on the part of the government will not establish the requisite "bad faith" necessary to show a deprivation of constitutional due process. *Monzo*, 281 F.3d at 580. The defendant, instead, must show a "conscious effort to suppress exculpatory evidence." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Under the second element, the government is not obligated to disclose speculative, immaterial or inculpatory evidence, *United States v. Lindsey*, 482 F.3d 1285 (11th Cir. 2007), or evidence that

8

is not material to a defendant's guilt, *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991). To trigger the government's obligation to preserve, the exculpatory value of the evidence must have been apparent prior to its destruction. *Trombetta* at 489 (citing *United States v. Agurs*, 427 U.S. 97, 109-110 (1976)). The government's duty to preserve evidence is not absolute, *Youngblood*, 488 U.S. at 58, but is limited to that which "might be expected to play a significant role in the suspect's defense," *Trombetta*, 467 U.S. at 488. The materiality of evidence is determined by whether a reasonable probability exists that the disclosure or presence of the missing evidence would alter the outcome of the proceedings. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Under the third *Youngblood* element, the defendant must establish that comparable information is not available from another source. *Trombetta*, 467 U.S. at 488-89. The key inquiry is whether the government possesses material information which the defendant does not. *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). If the defendant can obtain comparable evidence by other, reasonably available means, then the government has not violated the defendant's constitutional rights. *Trombetta*, 467 U.S. at 489.

Here, Nuttall's claim is based on the government's failure to preserve the Original State Exhibit Receipt bearing Jermel Brown's guilty plea in Shelby County Criminal Court. Nuttall has not alleged any specific misconduct or bad faith on the part of the

9

government or the MPD.  While the property and evidence room clerks who handled both Nuttall and Brown's guns may have been negligent in their assignment of the weapons, Nuttall has made no allegations or presented any evidence that the mix-up was the result of a deliberate plan or scheme to suppress exculpatory evidence. Rather, the destruction of the Original State Exhibit Receipt by Richter was, by all accounts, part of her effort to correct the mis-assignment of the gun.   Therefore, Nuttall has failed to establish the requisite element of bad faith.

Moreover, under the circumstances, the exculpatory value of missing document was not apparent prior to its destruction or loss. The information contained in the missing document deals with the disposition of charges against Brown in an unrelated case. Although the Original State Exhibit Receipt containing the notation of Jermel Brown's guilty plea to possession of the firearm linked to Nuttall could conceivably contribute to Nuttall's defense, the Original State Exhibit Receipt does not exonerate Nuttall of the charges presently pending against him. The fact that the handgun retrieved from Nuttall was erroneously associated with Brown's state court case presents a chain of custody issue, rather than a due process issue.   Therefore, because it is unlikely that the outcome of Nuttall's case would be different if the Original State Exhibit Receipt were produced, the Original State Exhibit Receipt is not exculpatory evidence but, at best, is potentially useful

10

evidence.

Finally, Nuttall has comparable evidence to the Original State Exhibit Receipt.  Nuttall claims that the Original State Exhibit Receipt shows that the handgun recovered from Nuttall was assigned to Jermel Brown's Shelby County Criminal Court case and that Jermel Brown pled guilty to possession of that particular gun as evidenced by Jermel Brown's guilty plea stamped on that receipt.  The government has already produced a corrected receipt in response to Nuttall's discovery requests, which contains the same information minus the guilty plea stamp and includes a notation that the transfer error was corrected on June 1, 2009.  Nuttall's counsel was present when the government learned that the weapon had been mis-assigned to Brown's case.  The government has allowed Nuttall's attorney to inspect Nuttall's handgun and has made available to him all documents concerning the handgun.  There is nothing to keep the defendant from calling Richter as a witness and questioning her about the Original State Exhibit Receipt and its contents. Therefore, under the circumstances, the corrected copy of the receipt combined with witness testimony is sufficiently comparable to the Original State Exhibit Receipt as to avoid any violation of Nuttall's due process rights.

Nuttall has failed to established the necessary elements to establish a due process violation.  Therefore, it is submitted that Nuttall's motion for dismissal of his indictment should be denied.

C.   Exclusion of the Firearm

The relevant test for admissibility of evidence is whether there exists a "reasonable probability of misidentification." *United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004). "Challenges to the chain of custody go to the weight of the evidence, not its admissibility." *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990), *cert. denied*, 498 U.S. 1091, 112 L. Ed. 2d. 1060, 11 S. Ct. 974 (1991). *See also United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989), *cert. denied* 491 U.S. 909 (1981)(stating that gaps in the chain of custody speak to the weight and not the admissibility of the evidence). "Physical evidence is admissible when the possibility of misidentification or alteration is 'eliminated not absolutely, but as a matter of reasonable probability.'" *Combs*, 369 F.3d at 938 (quoting *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997)). Mere speculation as to evidence tampering is insufficient to render the evidence inadmissible. *Allen*, 106 F.3d at 700.

Here, officers seized the handgun from Nuttall and promptly documented the handgun's identifying information including the name of the manufacturer, the model, the caliber and the serial number. The officers then transferred the handgun to the MPD Property & Evidence Room for holding and created an evidence report containing the same information listed above. Project Safe Neighborhood Unit detective Jonas Holguin processed the handgun for latent

12

fingerprints and returned the gun to the MPD Property and Evidence Room.  Det. Holquin's report contains the identical information about the gun as the MPD's incident report and evidence report. The handgun was then erroneously transferred to the Shelby County Criminal Court Clerk's Property and Evidence Room in an unrelated case where it remained until the mistake in transfer was discovered.  The handgun was then located, the error was corrected, and the handgun was returned to the MPD's Property & Evidence Room.

Both the MPD and Shelby County Clerk's Property & Evidence rooms are located at 201 Poplar.  Despite the clerical error in transfer and assignment, the handgun never left the building at 201 Poplar and was always identified by the same evidence number. Thus, there was no break in the chain of custody; rather, the firearm was merely temporarily stored in the Shelby County Criminal Court Clerk's Property and Evidence Room.

Nuttall's counsel has inspected the firearm and has not raised any objection that the firearm now stored at the MPD Property & Evidence Room is anything other than the original firearm described in the incident and evidence reports filled out at the time of Nuttall's arrest.  Therefore, the court submits that Nuttall has failed to show a reasonable possibility of misidentification and recommends that Nuttall's alternative argument for exclusion of the firearm be denied.

III. RECOMMENDATION

For the reasons set forth above, it is recommended that Nuttall's motion to compel and his alternative motions to dismiss and/or exclude evidence be denied.

Respectfully submitted this 19th day of November, 2009.


__
s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE